21-4046 Nielson v. Harley-Davidson Motor Company Councilman Proceed Mr. Sanger Thank you your honor. This is a very unusual case that we have for you today. In all the product cases that I'm typically involved in, this is the rare one where you have specifications that set the parameters for the product, objective measurements that show that the product fails to meet its specifications, you have the tolerance documents, you have again measurements to show that product is question. In terms of that causation question, our concerns with the judge's order where he excluded Mr. Worley's testimony on causation really come into the dramatic distinction between the two phases of the Daubert process. The de novo phase where the question is did the court apply the correct standard and then the abuse discretion phase. I want to start with the de novo phase. In the de novo phase, as discussed in the Burlington Northern Santa Fe Railway case, the Bittler v. Aove case, the Dodge case, there are a couple reasons why we have questions about whether the court applied the correct standard. Those reasons come down to one. The judge has said that Mr. Worley's causation analysis is mere ipsy-dixit and there is an analytical gap. Well, when my clients ask me what does ipsy-dixit mean, what are you saying, I explain that it's an expert who says that a problem is such because he says so because I'm the expert and I say so. In this case, it's very hard for the clients, the Nielsen family, to reconcile the fact that Mr. Worley is quoting from the unchallenged expert analysis of Dr. Dan Lee on causation. There is the causation analysis included within the Utah Highway Patrol report which says the tire failure caused the crash. Well, counsel, can I just stop you there? Could I get you to directly address the district court's concern about the expert testimony here that the expert excluded a whole host of possible causes but never produced any evidence or his opinion based on evidence that your particular theory caused the crash? I think tire failure did cause it right? I don't think anybody disputes that but what caused the tire to fail and I'm trying to figure out what evidence you have of your particular theory. Okay, well what we have there of our particular theory is that A, we have unequivocal documentation of the defect in the bead area where the tire needs to form an airtight seal. B, we have a citation to the industry literature, particularly the evolution of the tubeless tire written by Herzog who basically invented the tubeless tire who says that part of the tire must be smooth or you will lose air. We have motorcycle industry literature and again I'm talking about the Cycle World article that was quoted by Mr. Worley that if you don't trim that excess rubber and that's the exact defect that we're talking about. If you don't trim that excess rubber you will have air loss. We have warranty reports where this exact phenomenon both with new tires and tires that have been in the field for a long period of time have exhibited this air loss phenomenon and it's tied back to defects in the bead area of the tire. So we have, we also have testimony from two people who were the quality control inspectors at the plant and asked what's the purpose for trimming off this extra rubber which isn't trimmed in this case. Both of them say well you have air loss if you don't trim that rubber. So they're giving testimony that the exact defect results in the exact failure mode. We have additionally the fact that you know just for example General Motors did a recall on a real rim that they were selling because the interface between the tire bead and the real rim over time could give rise to a circumstance where the tire would fail catastrophically. I mean that's essentially the same mechanism that we are talking about in this case. So we have literature, we have testimony, we have the internal specifications which all point to the fact that this defect is what caused the tire to fail. Also normally when you see a tire deflate there are questions which have to be answered. But in this case for example the tire pressure was checked just an hour before the fatal crash and so we know that the tire pressure was good up until very shortly before the crash. Also a lot of times you will see a tire lose pressure because it's picked up a nail or a screw. Well we were able to inspect the inner liner of this tire and no party in this case, not Harley-Davidson, not Goodyear, not the plaintiffs is suggesting that this loss of air pressure was due in any way to impact damage or picking up a nail or a screw or some other puncture. Likewise we've looked at the wear patterns on the tire and confirmed that they are not indicative of a service use that would cause this sudden rapid tire failure. Did the experts say here are the full universe of eight things that could cause a tire to fail and I have eliminated seven of them and the last one there has to be the answer? Yes he did both in his affidavit and his report. He said essentially that but I did some a summary of his testimony. Yeah he does in his report he has a whole section and supports like 104 page report. Does he say that there are only seven or x number of reasons why a tire could fail and I can eliminate six of them and therefore it has to be number seven. Did he say something about, did he set some universe of maximum potential causes of failure and then address all but one of those? He said I don't know if he says there are seven. He says these are the known causes of failure. I've ruled out everything but this last one. Okay all right so that's the quote that at least not in exact language but that's the essence of what he could be construed to have said. It is a whole session within his 104 page report and it is more than one paragraph I believe of this 27 page affidavit. Yeah well let me go on. Since my clients have this question about why does this, why is this Ipsy Dixit? Why did not the four volumes of evidence we offered fill the analytical gap that the court refers to? That brings us to the fact that the report is, I mean the opinion is very very detailed in outlining Harley-Davidson's and Goodyear's complaints. It cites them all page in line with citation references but the evidence that fills the analytical gap isn't even mentioned or even alluded to. So you have an extremely detailed recounting of Harley-Davidson and Goodyear's motion to exclude and then virtually no reference to the affidavit or other attachments offered to fill that analytical gap and that seems to go contrary to the Burlington requirement that the order must be detailed enough to give an indication that the court carefully and meticulously considered the evidence. It seems like this case seems to be kind of a far cry from Burlington or the other cases that you describe in your briefs. It seems like in those cases the court basically made no findings and one of them I don't remember was Burlington there was actually a hearing but still there were no findings. This is certainly not our case here. We have some fairly extensive findings and I don't know, have we ever said in a case simply because the court doesn't consider all of the arguments that you make or all of the evidence that you claim is relevant? No, I'm not. Use of discretion because that's the standard here, abuse of discretion. Well, if it is, if we do make it to the abuse of discretion standard and the reason why I don't think we do is one, the lack of discussion of why the evidence doesn't meet the FC, doesn't go beyond FC. Two, there is this requirement, I mean the only thing the court says is that he, Mr. Worley could have done a test and he didn't do a test without mentioning that test is a $50,000 test. According to protocol, he would have to invent for this case and it's not a test that either Harley-Davidson or Goodyear did in the development of the tire which again, the district court didn't require tests though. I mean it made it pretty clear that that wasn't required. It's just one factor. He does and then the third thing is I would say if he talks about a test and he doesn't discuss the evidence offered in lieu of the test, it sounds like he's offering a credibility analysis and not limiting himself to did you follow a methodology that's reliable and did you offer reliable evidence in accordance with that methodology. It feels like this is a credibility test which would be wrong but let me go past that and jump to the abuse of discretion. Under the Wyeth case, what we have here is somebody who looked at the defendant's documents just like Mr. Worley did, analyzed them in the context of his own literature and his own measurements and explained why there was causation there. This would seem to be an abuse of discretion under both McCoy versus Whirlpool and Wyeth versus Makita Electric Works. So I feel like we have an abuse of discretion in addition to perhaps not a compliance of proper tests. If the court does not have questions now, I'd like to reserve the rest of my time for a vote. Certainly. Thank you, counsel. Mr. Shelton? Yes, good morning. David Shelton on behalf of Harley Davidson. The appellees are aligned with respect to the appeal so I'll be handling the argument on the appellee's behalf unless there's a need for something particular from Simitomo. We certainly ask that the court review the district court's order for abuse of discretion and under that standard the appellants cannot prevail because they can't show that there was an arbitrary or capricious or whimsical ruling made by the district judge. As the court's already mentioned, this is a case where the record shows that the district court prepared a detailed order, went through analysis of what the particular allegations and theories were by the expert, went through the cases, went through the standard, and then applied that standard. In my mind, the district court did everything that this court has told district courts they need to do when conducting a Daubert analysis. It did say, didn't it, that the problem here is there wasn't any independent evidence. In addition to this theory that the expert had ruled out all the other causes and this is the only one left, the court said, well, you know, the Tenth Circuit requires some independent evidence to corroborate the theory as well and there just isn't any here. There's none here and we've just heard from plaintiff's counsel and he's identified what he believes that evidence was. Is it an abuse of discretion to say there isn't any without outlining why what the plaintiff has put forward doesn't constitute that independent evidence or you don't find it sufficient? I would submit that... How do we know? When he says there isn't any, does that mean he wasn't aware that this is what the plaintiffs were relying on or does that mean he's looked at it but he doesn't think it actually shows the connection that he's looking for? I believe it's the latter. I think the district court was very clear in going through and acknowledging what Mr. Worley's opinions were and what the basis for his opinions were. The district court went through all of that analysis and ultimately concluded under the case law that there has to be something more than just that Mr. Worley says that this defect manifested itself at this particular time and that's the key part of why Mr. Worley's theory is novel. It's not that he's got some idea that the tire and the rim separated immediately upon putting them on the motorcycle. The problem here is that we've got a 20-year-old motorcycle, we have an eight-year-old tire, we have a tire that's worn over 60% of the tread. They have evidence that there's no prior evidence of leakage of the tire. As counsel indicated, one hour before the accident, the tire pressure was allegedly checked by Mr. Nielsen. They argue that that's significant for them but that, I think, creates a significant issue for them that the district court had to address and say, okay, if an hour before the tire is checked and the pressure is fine and these conditions that Mr. Worley says exist, they existed at that point. They existed every moment that this tire and rim were being used on the Nielsen motorcycle. How does Mr. Worley explain if those conditions have been there all along, for all these thousands of miles, all of a sudden in the last two to ten minutes, according to Mr. Worley, now they create the problem? I did notice that I agree that when these defects manifested themselves or the circumstances in which they did and the timing of it is all part of it but I didn't actually see the district court outlining in any way like what you just said. I think you did in your brief but that part of it seems to be lacking from district court's opinion. I would suggest that the district court's order, if you look at it, the district court started with these facts that I just outlined about the manifestation of the problem. I just didn't see it tie it. I just didn't see the court tie it together. I'm not saying that we can't. Maybe it's not as clearly tied in but I think that the analysis suggests that the district court started from this particular nugget, factual nugget, and that's what and that's what Daubert says. That's what Comeau Tire says is you've got to you've got to have an explanation for what happened in this particular case. That's why the district court's opinion starts with these key facts and these are all undisputed. I mean both sides agree, you know, with the age of the tire and age of the rim and all of these all these things, that's undisputed. So the question is how do we get from these undisputed facts to a theory that these conditions that have allegedly been there for 20 years on the rim and for eight years on the tire that all of a sudden create a problem that that's the cause of the tire deflation. That's the cause of the tire or the tire unseating from the rim. How does that, how does he prove that? And all of the evidence that the that Worley cites too is all very general evidence and the court and the district court acknowledged all of that. The district court said I appreciate that this is what he relies upon but in this particular case I think to explain why this defects manifested itself after all these thousands of miles, after all these years, we need more. And Comeau Tire says that the district court has discretion to look at whether these theories, whether these novel theories have been tested, whether there's peer-reviewed whether there's scientific studies that support them and Worley admits that there's none of that. He has very very general information about the connection between the tire and the rim that he relies upon but that's too general and and counsel started the argument by saying that this is a unique case because it's based upon measurements. I suggest it's not a unique case. We rely very much on the theory that the tire was driven by measurements as well. That's one where they had a ladder and the and the rungs of the ladder were spaced too too wide and they violated OSHA standards. There was no dispute that the rungs of the ladder were too too wide and that that was a problem but the district court still said I want to see some testing in order for the causation opinion to be reliable and admissible and this course of court affirmed because of the abuse of discretion standard and and I would submit that the the appellant in this case has tried is trying to run away from the abuse of discretion standard because it's such a tough standard they're trying to create my concern on that is the one thing that is not so tough on an abuse of discretion standard is if there's an error of law and my concern was that the district court started off by saying we we aren't going to require testing but then it immediately morphed and said but you know look at Bidler and and here we have we need something more than the expert's testimony and I think the court misread Bidler because Bidler said the only time you need independent testing is in a novel case and a novel case is decide defined as something that is a deviation or inconsistent with standard of scientific principles and there is no evidence that this expert wanted to advance anything that was inconsistent with normal scientific principles and therefore to say that it was novel and therefore to say that something more than the expert's opinion is necessary is a misreading of Bidler and and that mis misleading then was the core it seems to me it could be argued to be the reason why this court denied that expert so I'm concerned simply about the reading that the court gave to Bidler whether that's an error of law that would require the court to go back in and address it properly this is all overlaid by the court's lack of any careful discussion of of the evidence in support of the expert here and to defer to articulate or discuss even why that was such a novel theory I would I would point out to your honor that uh the the Bidler case was a case where the the district court did allow I know there's language in the Bidler case that the that people are relying on heavily now about be something more but that language addresses only statements that are inconsistent with established scientific principles and that's simply we don't have anything like that in this case so to suggest there has to be something more than the expert's opinion I think is a misreading in the court's reasoning of this case and uh would would lead to uh I suspect a lot of confusion about when and when not to admit experts I still submit that the Bidler is an abusive discretion case because the court affirmed the uh the testimony in that case and said that it was it was it was proper to admit the testimony um and I think that Kumo Tyre says that it's a it's entirely appropriate for the district court to consider whether there's testing considering whether there's scientific studies and peer reviewed literature all of that there's no doubt that in this case the court finally ended up by you don't have anything any testing testing to or anything more than this expert's opinion and ordinarily a district court says well that's what this is all about is the expert's opinion that's why you have an expert because there isn't anything more because it is something you need an expert to help interpret and the court here seemed to say you don't always need testing I agree with that he said all the right words but then he he rejected the expert's because there was no independent testing um and and that I and I think that that is not what what uh our president says and if he is being misread I think that's a error of law not an error of fact I submit that the district court's view of testing and scientific studies and peer reviewed literature is consistent with Kumo Tyre I think they the district court was properly um and make a determination whether in his discretion it was appropriate to have something more than just the the expert's opinion in this it is a technical question and and I believe it is novel in the sense that no one else there's no one else who's out there advancing this theory bingo bingo that is where the definition of novel needs to be clarified you and the district court interpret novel as something that hasn't occurred before but the word novel has been used by us and others as something inconsistent with standard technological and scientific principles and there is and under that definition of novel it simply doesn't apply here so it seems to me I think there's at least a significant risk that the district court used the wrong concept of novel and at the very least deserves a remand for the district court to clarify if he understands properly the legal definition of novel it means there's no case you don't have a prior case where there is testing right on point it means that a principle is being advocated which seems to be a deviation from standard scientific principles but but there is it there is a case that uh all fours with respect to the tire that has been decided before that the tim case out of the seventh circuit and in that case the the district court excluded the testimony of mr whirly with respect to the tires he excluded other opinions with respect to the motorcycle and the seventh circuit affirmed it yes but you look at mr whirly's affidavit and he has a just a remote I would use a different word under other circumstances but a ring load of of differences between the evidence he has here and the deficiency of the evidence that he had in that case but he had the exact same evidence the testimony in this case we we asked him questions with respect to the record between tim and here and he said with respect to the tire there is no evidence there's nothing different about the record in that case and in this case with respect to the tires this is exactly the tim case he hasn't done anything new he hasn't developed anything new if you look at the if you look at the affidavit that is quoted in the appellant's reply brief on 16 and 17 there is a whole bunch of differences from the tim case there are differences with respect to the accident i would agree with that but with respect to his causation opinions particularly with respect to the unseating of the tire from the rim he's very clear and it's it's in uh it's in the record that we asked him is there anything new or different that you've done to support these tire opinions since tim and he said with respect to the tire no so the record's the same in this case as it was in tim and he said i would characterize that to be true this case is for abuse of discretion by following the seventh circuit with respect to the exact same record with respect to the tire so was there a puncture in that case there was and that's right that's a that's a huge difference there's a difference for for why the tire deflated in that case i agree with that but that's all part of the analysis here is why yes but the big the big part of the reason why the the tire deflated may have been different in both cases but the real problem that they have or the real problem that they are trying to say is the defect is the unseating and the unseating is that is the same because we have the exact same tire and rim combination we have the same conditions no we can't reach that conclusion because a loss of air pressure from a puncture would be very different from the loss of air pressure from other reasons and the seating could respond differently to those those sudden traumatic loss versus a slower loss i mean i don't know i'm not an expert all i'm saying is it seems to me when i what i am concerned that the district court may have uh even though he said he doesn't require testing he may have required testing with a error of law of what a novel scientific testimony constitutes and i think is at the very least he ought to be given the chance to clarify what his reasoning was i know my time is up if i could just have one comment about that i i go back to the taber case the taber case is another case for the where the trial judge said there was no testing support the causation theory and this court affirmed saying there was no abusive discretion i think under that standard we deserve the same result in this case thank you thank you counsel uh we we very much appreciate your arguments did you have some rebuttal i'm sorry thank you your honor um i just want to very briefly say um you know another reason why the tim case is not a thing to follow is that obviously as this court recently held and um or held and hollander versus and those pharmacy every d'albert decision must go on the record and since the record in that case is so overwhelmingly different it's it's a it's apples and oranges it's a different analysis if it was if this disclosure was based on qualifications it would be similar but it's with respect to um what did mr worthy say that we explained that this should happen after you know eight years well he pointed to the warranty returns where this defect manifested for the first time after several years of uh tire service he pointed to the dynamic nature of the literature supporting the dynamic nature of the room and literature supporting the changes to rubber over time thank you your honors thank you thank you counsel uh we appreciate both of your arguments they've been very helpful um the case will be submitted and counsel or excuse the